IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10650
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellant Cross-Appellee


v.

JANET MITCHELL ELI,

Defendant-Appellee Cross-Appellant

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:94-CR-433-T)
_____
August 22, 1996
Before KING, JONES, and SMITH, Circuit Judges.

PER CURIAM:[*]

Janet Mitchell Eli was indicted on counts charging her with threatening federal law enforcement officers and a witness in a federal criminal trial and making false statements to a federal court.  Following a jury verdict of guilty on all counts, the district court granted Eli's motion for acquittal on the false statement counts and for a new trial on the threat counts.  The

_____

[*]  Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Government appeals the order granting the motion for a new trial. We vacate the order granting a new trial and remand for further consideration by the district court.

## I.  BACKGROUND

### A.  Facts

During late February 1992, Eli and other individuals, including Shenna Fisher, stole U.S. Treasury checks from the mails.  Eli and some of her co-conspirators forged and cashed the stolen checks.  In May 1992, Fisher gave a sworn statement to Postal Inspector David McDermott in which she admitted participating in the thefts and forgeries and identified Eli as the mastermind of the scheme.  Fisher was convicted of offenses related to this scheme and sentenced to three years probation. She violated this probation in late 1993 and was sentenced to twelve months imprisonment.  She commenced serving this sentence in January 1994 at a federal prison for women in Bryan, Texas.

In August 1993, Eli was convicted of possession of stolen mail and forgery of U.S. Treasury checks.  At this trial, Judge Sidney Fitzwater presided, Joseph Revesz was the prosecutor, McDermott was the case agent, and Fisher was a witness for the Government.  Eli was sentenced to a prison term and began serving this sentence at the Bryan prison in April 1994, approximately two months after Fisher had been sent there.

2

In May 1994, Judge Fitzwater, Judge Joe Kendall, and Eli's defense counsel received letters signed by Fisher in which she recanted her trial testimony against Eli and alleged that Revesz and McDermott had instructed her to lie about Eli and had otherwise coerced her cooperation. Also in May, Fisher signed an affidavit making the same allegations found in the letters; this affidavit was notarized. On May 31, Eli herself sent a letter to Judge Fitzwater, stating that Fisher had admitted committing perjury at Eli's trial.

In July 1994, Postal Inspector R.T. Welborn interviewed Fisher at the Bryan prison. Fisher told Welborn that Eli had prepared or directed the preparation of all of the letters and the affidavit, that Eli had threatened her with bodily harm if she did not cooperate, and that Eli had told her she would receive home confinement if she signed the letters. In addition, Fisher told Welborn that her trial testimony was true and that the contents of the letters were false. Later, Welborn interviewed Bryan inmate Lindy Lovett. Lovett told Welborn that Eli had tricked Fisher into signing letters and an affidavit. Lovett also stated that Fisher was afraid of Eli and feared that she would have been harmed if she had not cooperated with Eli.

Following Welborn's investigation, Eli was transferred from the Bryan prison. In late 1994, Eli was incarcerated in the Dallas County Jail. Tanya Nicosia, a Dallas County inmate, notified Revesz that Eli was making threats against Revesz,

3

McDermott, and Fisher.  Nicosia also stated that Eli's father had

spoken with Eli on the phone about offering contracts to kill

certain individuals and that Eli's father came to Dallas in

October 1994 for the purpose of executing contracts to kill

Revesz, McDermott, and Fisher.  Nicosia prepared a statement in

which she recounted these allegations in detail and also reported

that Eli had told her about coercing Fisher to recant her trial

testimony.

## B.  Procedural History

In December 1994, Eli was indicted by a grand jury.  Counts

1-3 alleged that Eli had threatened Revesz, McDermott, and Fisher

on October 30, 1994, while Eli was incarcerated in the Dallas

County Jail, in violation of 18 U.S.C. § 115(a)(1)(B)[1] and 18

U.S.C. § 1513(a)(1).[2]  Counts 4-8 charged that Eli had caused

---

[1]18 U.S.C. § 115(a)(1)(B) states in pertinent part:

Whoever . . . threatens to assault, kidnap, or
murder, a United States official . . . [or] a Federal
law enforcement officer . . . with intent to . . .
retaliate against such official . . . or law
enforcement officer on account of the performance of
official duties, shall be punished . . . .

[2]18 U.S.C. § 1513(a)(1) states in pertinent part:

Whoever . . . attempts to kill another person with
intent to retaliate against any person for--

(A) the attendance of a witness . . . at an
official proceeding, or any testimony given .
. . in an official proceeding; or

4

Fisher to make false statements to United States District Court judges and that she herself had also made false statements, in violation of 18 U.S.C. § 1001. Eli pled not guilty and was tried before a jury.

For its case in chief, the Government introduced the following witnesses: Nicosia, Revesz, McDermott, Fisher, Welborn, Lovett, Postal Inspector Jack McDonough (who was involved in the original investigation of the stolen checks), Danette Williams (another Bryan inmate), Raymona Galloway (a co-conspirator in the stolen check scheme), a typewriter expert, and three government officials who had previously used Nicosia as an informant. Nicosia testified that Eli had made threats against Revesz, McDermott, and Fisher while she was incarcerated in the Dallas County Jail and that she had made arrangements with her father to have those individuals killed. The government officials who had previously used Nicosia as an informant testified as character witnesses on her behalf. Fisher testified that Eli coerced her to sign the letters and the affidavit recanting her trial testimony, while threatening her, her mother, and her children; she also testified that Eli threatened to "knock off" Revesz and McDermott. The Government offered

---

        (B) providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense . . .

shall be punished . . . .

5

testimony from Lovett, Williams, and Welborn to corroborate Fisher's version of the events at the Bryan prison. The typewriter expert verified that the letters and the affidavit had been typed in the Bryan prison. Revesz, McDermott, and McDonough gave testimony regarding their involvement in the investigation and prosecution of the stolen check case. Finally, Galloway testified that, after their arrest, Eli threatened to "get" the person who started the investigation.

The jury found Eli guilty on all counts. Eli filed a motion for a judgment of acquittal or for a new trial. The court denied the motion on May 17, 1995. On May 15, 1995, the Supreme Court decided *Hubbard v. United States*, 115 S. Ct. 1754 (1995), which held that 18 U.S.C. § 1001 does not apply to the making of false statements in judicial proceedings. As a result, Eli filed a motion for reconsideration of the court's denial of her motion for acquittal or new trial. Specifically, Eli moved for a judgment of acquittal on Counts 4-8, the false statement counts, and a new trial on Counts 1-3, the threat counts. In response, the Government conceded that, in light of *Hubbard*, the convictions on Counts 4-8 could not stand; however, the Government asserted that the convictions on Counts 1-3 were not affected by the infirm counts.

The district court entered a judgment of acquittal on Counts 4-8 and granted Eli's motion for a new trial on Counts 1-3. The

6

court concluded that: (1) the evidence on the invalidated counts prejudicially spilled over such that the jury probably used that evidence in reaching a verdict on the remaining counts, and (2) the Government had failed to establish that the evidence admitted on the invalidated counts would be admissible in a trial on the remaining counts alone. The Government timely appealed.

## II. DISCUSSION

### A. Standard of Review

We review a district court's order granting a new trial in a criminal case for abuse of discretion. *United States v. Logan*, 861 F.2d 859, 863 (5th Cir. 1988); *United States v. Arroyo*, 805 F.2d 589, 597 (5th Cir. 1986).

### B. Arguments

The Government contends that the district court abused its discretion in granting Eli's motion for a new trial, asserting that the evidence admitted on the false statement counts would have been admissible in a trial on the threat counts alone. First, the Government argues that the evidence offered on the false statement counts was inextricably intertwined with the evidence on the threat counts, and therefore was admissible intrinsic evidence. Alternatively, if the evidence on the false statement counts was extrinsic with respect to the threat counts,

7

the Government argues that it was admissible extrinsic evidence under FED. R. EVID. 404(b).  In this regard, the Government contends that this evidence would have been admissible to show: (1) an overall plan of retaliation to cause death or bodily harm to those responsible for Eli's conviction and to get her conviction overturned; (2) Eli's motive for making the threats; or (3) Eli's specific intent to retaliate.

## C.  Analysis

Rule 33 of the Federal Rules of Criminal Procedure provides the general standard to be applied by district courts in granting new trials:  "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." FED. R. CRIM. P. 33.  Further, "in acting on new trials generally, the harmless error rule is usually appropriate."  *United States v. Logan*, 861 F.2d 859, 864 n.3 (5th Cir. 1988).

Of course, application of the harmless error standard presumes the existence of error.  Accordingly, the district court must first determine whether there has been an error at all. Here, the alleged error is that the evidence presented to support the invalidated false statements counts would not have been admissible in a trial on the threat counts alone.  Therefore, the district court in this case was required to determine whether the

8

evidence introduced in support of the false statement counts would have been admissible in the absence of those counts.

If some of the evidence presented on the false statement counts would not have been otherwise admissible, the district court was then required to determine whether the error in this regard was harmless. "In determining whether an erroneous admission of evidence is harmless error, the court . . . must decide whether the inadmissible evidence actually contributed to the jury's verdict; . . . the evidence [must have] had a substantial impact on the verdict." *United States v. Campbell*, 73 F.3d 44, 47 (5th Cir. 1996); *see also United States v. Gadison*, 8 F.3d 186, 192 (5th Cir. 1993). Considerations relevant to this inquiry include the strength of the Government's case without the inadmissible evidence, the manner in which the inadmissible evidence was presented to the jury, and whether the impact of the inadmissible evidence was minimized by a curative jury instruction. *See Gadison*, 8 F.3d at 192 (holding that admission of evidence of a prior conviction would be harmless error where the evidence added little to the Government's case, the details of the conviction were not explained to the jury, and the court minimized any prejudice through a jury instruction); *see also United States v. El-Zoubi*, 993 F.2d 442, 446-47 (5th Cir. 1993) (holding erroneous admission of evidence harmless

9

based on strength of remaining evidence); *United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991) (same).

In granting Eli's motion for a new trial, the district court applied a test enunciated in an analogous Second Circuit decision, *United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994), that echoes somewhat the harmless error standard. The court of appeals in *Rooney* reversed one count of a multicount conviction. *Id.* at 854. The court then described its next task as being to "determine if prejudicial spillover from evidence introduced in support of the reversed count requires the remaining convictions to be upset." *Id.* at 855. To make this determination, the court analyzed three factors:

    (1)   whether the evidence on the reversed counts would have tended to incite or arouse the jury on the remaining counts;

    (2)   whether the evidence introduced on the invalidated counts would have been inadmissible on the remaining counts *and* was presented in a way that tends to indicate that the jury probably used it in reaching a verdict on the remaining counts;

    (3)   whether the government had a strong case on the remaining counts.

*Id.* at 855-56.

Here, the district court did not discuss whether there was any evidence on the reversed counts that would tend to incite or arouse the jury on the remaining counts. With respect to the second *Rooney* factor, the court stated that "the [G]overnment has failed to establish that all evidence admitted on the invalidated

10

counts would have been admissible on the remaining counts" and that the Government "repeatedly requested the jury to consider evidence on the invalidated counts in assessing the evidence on the remaining counts." Finally, with respect to the strength of the Government's case on the remaining counts, the court noted that the Government primarily relied on one witness to establish that Eli threatened Revesz, McDermott, and Fisher on October 30, 1994, while Eli was incarcerated in the Dallas County Jail -- Nicosia. The court questioned Nicosia's credibility, apparently alluding to the fact that Nicosia was a career criminal, with multiple convictions for theft and fraud, and that there were inconsistencies in her testimony. Based on these factors, the court determined that there was a prejudicial spillover of evidence that warranted a new trial.

If we realign the district court's reasoning into the harmless error procedural framework outlined above, it is clear that the court explained in some detail its conclusion that any error in this case was not harmless. Specifically, the court discussed the strength of the Government's case on the threat counts and the manner in which the evidence offered in support of the other counts was presented to the jury. However, with respect to the threshold inquiry -- whether there was error at all -- the court offered no reasons for its determination that not all of the evidence would have been admissible in a trial on the threat counts alone. The court failed to explain which

11

evidence would not have been admissible.  Further, the court did not discuss why the unspecified evidence was not intrinsic evidence or admissible extrinsic evidence under FED. R. EVID. 404(b).[3]

Given this sparse analysis by the district court, we conclude that we are unable to review the court's decision for an abuse of discretion.  We could resolve the evidentiary issues ourselves and then determine whether the district court's grant of a new trial constituted an abuse of discretion; however, because the admissibility of evidence is itself a matter within the trial court's discretion, we would be ill-advised to decide these evidentiary issues in the first instance.[4]  Accordingly, we think it advisable to vacate the grant of a new trial and to remand with instructions that the district court reconsider the motion under the harmless error standard and set forth with specificity the reasons for its decision.  While we appreciate the district court's hesitation to discuss in detail the admissibility of evidence that the Government may proffer later

_____

[3]Also, the district court may have misallocated the burden of proof on this issue.  The court indicated that the *Government* had failed to establish that all of the evidence would have been admissible in a trial on the threat counts alone.  As Eli concedes, however, the movant bears at least the initial burden in this regard.

[4]That is not to say that we would necessarily refrain from deciding such evidentiary issues in another case.

if the case is retried, it is an inquiry that the court cannot avoid under these circumstances.

### III. CONCLUSION

For the foregoing reasons, we VACATE the district court's order granting Eli's motion for a new trial on Counts 1-3 of the indictment and REMAND for further consideration of the motion consistent with this opinion.